IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE | CASE NO. 22-01676 (ESL) |
| ESJ TOWERS INC | CHAPTER 11 |
| Debtor | |
| COMMITTEE OF UNSECURED CREDITORS FOR ESJ TOWERS, INC. | ADVERSARY NO. 25-00027 |
| Plaintiffs | |
| vs. | |
| STEPHEN L. NALLEY; BLACK BRIAR ADVISORS LLC | FILED AND ENTERED 4/6/2026 |
| Defendants | |

OPINION AND ORDER

This adversary proceeding is before the court upon the motion to dismiss filed by Black Briar Advisors, LLC ("**Black Briar**") and Mr. Stephen L. Nalley ("**Mr. Nalley**", and together with Black Briar, the "**Defendants**") on June 16, 2025 (dkt. #17), the response of the Official Committee of Unsecured Creditors (the "**UCC**" or the "**Committee**") (dkt. #18), and the Defendants' reply (dkt. #34).

For the reasons stated below, the motion to dismiss is DENIED, in part, and GRANTED, in part.

Factual and Procedural Background

1. On June 10, 2022, the Debtor filed a voluntary petition for relief under Chapter 11 and began managing its affairs and operating its business as a debtor-in-possession. See Bankr. dkt. #1.

2. On December 18, 2022, the Debtor entered into a Management Agreement with Black Briar pursuant to which Black Briar would manage the Debtor's operations (the

-1-

"**Management Agreement**"). Concurrently with the execution of the Management Agreement, Mr. Nalley assumed the role of the Debtor's Acting General Manager.

3. On December 20, 2022, the Debtor filed an *Urgent Motion to Inform the Court and for Expeditious Action* (the "**Motion to Inform**", Bankr. dkt. #374) informing that under the management of Mr. Clifton Onolfo ("Mr. Onolfo"), the "Debtor [] made unauthorized disbursements from Debtor's debtor-in-possession account to Mr. Onolfo's counsel and designer, as well as for Mr. Onolfo's personal expenses and other intended unauthorized disbursements, as to which the undersigned, pursuant to his fiduciary duties to Debtor, its estate and its creditors, and his professional responsibility, informs the Court for the appropriate remedial action under the provisions of the Bankruptcy Code" (id., ¶ 12). The forgoing "situation caused [Debtor's] counsel to request a report from Debtor's Chief Financial Officer, Mr. Gerardo Rodríguez, and Chief of Staff, Ms. Maritza Vicente, in conjunction with Black Briar … leaded by Mr. Stephen Nalley, who on December 18, 2022, entered into a management agreement with Debtor in the regular course of business" (id., ¶ 14), that "Black Briar has been rendering managerial services to Debtor in Debtor's regular course of business" (id., ¶ 18), and that "due to Global Cities' breach of the Equity Purchase Agreement, ATWH is resolving and setting the same aside, with the understanding that the management of Debtor's affairs will continue by Black Briar, with no participation or interference by ATWH or Mr. St. Clair" (id., ¶ 20). See *Order* [granting *Urgent Motion to Inform the Court and for Expeditious Action*], Bankr. dkt. #381.

4. On June 16, 2023, the court expressed that "it is still not clear whether the Equity Purchase Agreement has been resolved and set aside and, consequently: (i) who is the rightful owner of the Debtor's stock; (ii) who are the Debtor's principals, officers, directors, and agents; (iii) who manages the everyday 4 business operations of the Debtor; and (iv) what role, if any, does Mr. Onolfo have in the everyday business operations of the Debtor", and ordered both the Debtor and Mr. Onolfo "to respond to the forgoing inquiries". *Order to Show Cause Re. Debtor's Corporate Structure*, Bankr. dkt. #833, p. 3.

5.     On July 7, 2023, the Debtor filed a *Motion in Compliance with Order to Show Cause Re Debtor's Corporate Structure* (Bankr. dkt. #923, p. 2, ¶ 2(iv)), answering as follows:

> During December 2022, Debtor hired Black Briar … a third-party management company to manage Debtor's day-to-day business. Black Briar is led by its Founder & CEO Stephen Nalley and supported by Debtor's Management Team. Black Briar is a full-service real estate company that specializes in the repositioning and turnaround of distressed hotel & resort assets. Debtor's Management Team consist of Maritza Vicente (Operations Manager), Nancy Velez (Accounting), Wing Fung (Accounting), Leslie Montes (Timeshare Administration), Alex Polanco (Housekeeping Director), Jamie Vázquez (Maintenance Director), Melvin Ramos (Security Director), Dania Cruz (Front Desk Manager) and Jose Nieves (Revenue Manager).

See also *Order* [granting *Motion in Compliance with Order to Show Cause Re Debtor's Corporate Structure*], Bankr. dkt. #948.

6.     On May 21, 2024, the court entered an *Order Confirming the Second Amended Chapter 11 Plan, as Supplemented* (Bankr. dkt. #1838). See *Second Amended Plan* (the "**Plan**", Bankr. dkt. #1691-1, 1792, 1831); *Approved Post-Confirmation Modification of Confirmed Second Amended Plan, as Supplemented*, dkt. #2003; *Order Grating Unopposed Motion*, dkt. #2011.

7.     On July 2, 2025, the Committee filed an *Amended Complaint* (dkt. #16) against Black Briar and Mr. Nalley, asserting three (3) causes of action:

a.     Count I: Avoidance and Disgorgement Against Black Briar. The Committee asserts that the Management Agreement, the services performed thereunder, and the fees received therefrom of approximately $600,000 did not receive court approval in violation of Sections 330 and 549 of the Bankruptcy Code, and seeks to avoid and disgorge said amount pursuant to Sections 329, 330 and 550 of the Bankruptcy Code, together with prejudgment interest.

b.     Count II: Breach of the Management Agreement Against Black Briar. The Committee seeks direct and consequential damages "of several hundred thousand dollars" on account of Black Briar's alleged breach of the Management Agreement (id.,

-3-

¶ 95). The Committee alleges that Black Briar breached the Management Agreement by, among other things, (a) conducting the Debtor's business —from and after November 2023— for the benefit of Fortaleza Equity Partners 2, LLC ("**Fortaleza**"), (b) agreeing to Parliament High Yield Fund, LLC's receipt of more than the secured amount of its claim, (c) terminating the Management Agreement without the required notice, and (d) failing to continue operating the Debtor through the closing of the sale of its assets to Fortaleza. The Committee alleges that Black Briar's breach of the Management Agreement caused Debtor to suffer damages including an inability to pay fees owed to the U.S. Trustee when the second quarter payment became due on July 31, 2024 (id., ¶ 69).

    c.    Count III: Breach of Fiduciary Duties Against Mr. Nalley. The Committee seeks compensatory and punitive damages "in an amount to be determined at trial" on account of Mr. Nalley's alleged breach of fiduciary duties to the Debtor (id., ¶ 99). The Committee alleges that Mr. Nalley breached his fiduciary duties to the Debtor by, among other things, (e) authorizing and/or making "hundreds of thousands of dollars in payments to professionals (including Black Briar) and other parties that were outside the ordinary course of business and were not authorized by the Court" (the "**Unauthorized Payments**") (id., ¶ 41), (f) agreeing to the allowance of the Class 6 Claim of the Council of ESJ Towers' Co-Owners (the "HOA"), (g) exposing the Debtor to liability to the timeshare owners who were omitted from the list of timeshare contracts to be assumed and assigned, and (h) delegating his duties to Mrs. Vicente, an employee of the Debtor and its informal chief of staff. See id., ¶¶ 65-66 (duties involved closing the Fortaleza Sale and overseeing and monitoring the Debtor's payments under the Plan); ¶¶ 68, 75, 76 (actions alleged by Ms. Vicente after the Confirmation Date). The Committee alleges that Mr. Nalley's breach of fiduciary duties caused substantial damage to the Debtor and its creditors, including (i) unpaid fees to the U.S. Trustee when the second quarter payment became due on July 31, 2024 (id., ¶ 69), (ii) professional fees that the Debtor

-4-

and the Committee incurred in connection with the termination of timeshare contracts, and (iii) Debtor's loss of its share of insurance proceeds following Mr. Nalley entering into an agreement on behalf of Debtor with the HOA and "other parties" on June 21, 2024, which "provided for the HOA (and thus, indirectly, Fortaleza) to receive all of the Insurance proceeds, regardless of their amounts, while the Debtor and its Class 6 Creditors would receive nothing from the Insurance" (id., ¶ 87).

8.      On July 16, 2025, Defendants filed a *Motion to Dismiss the Amended Complaint for Failure to State a Claim* pursuant to Fed. R. Bankr. P. 12(b)(6) (dkt. #17).

9.      With respect to Count I, Defendants argue that the Management Agreement was entered into in the ordinary course of the Debtor's business, that notice and hearing was not required pursuant to 11 U.S.C. §§ 363(c)(1), 1107(a). In the alternative, Defendants argue that to the adversary proceeding was filed on May 21, 2025, any claim seeking disgorgement of fees paid before May 21, 2023 are time barred under 11 U.S.C. § 549(d). With respect to Count II, Defendants argue that the action fails to satisfy the minimum pleading requirements of Fed. R. Civ. P. 8(a) and 9(b) by, *inter alia*, failing to describe with sufficient particularity which terms of the Management Agreement were allegedly breached, how Black Briar breached those terms, what false misrepresentations were made by Black Briar, who made them and when. They also argue that Count II fails to plead the elements applicable to a breach of contract claim under Puerto Rico law as there is no causal nexus between the purported termination of the Management Agreement and the damages asserted, and that damages in a contract action are limited to those which are "reasonably foreseeable". They argue that Black Briar's duties under the Management Agreement did not include "assuming control over the Debtor's Chapter 11 powers and duties … determining what payments the Debtor would make under the Plan, nor … ensure that the Debtor retained sufficient funds to pay the [U.S. Trustee's fees]" (dkt. #17, p. 13). Consequently, the "damage" allegedly suffered by the Debtor is not a reasonably foreseeable consequence of Black Briar's alleged breach, that is, the termination of the Management Agreement. With respect to Count III, Defendants argue that: (i) the Committee does not have

standing to pursue, on the Debtor's behalf, claims that accrued after the Confirmation Date (May 21, 2024) as per the terms of the confirmed plan (Bankr. dkt. #1838-1, pp. 17-18); (ii) Mr. Nalley personally did not owe a fiduciary duty to the Debtor because the Management Agreement was entered by the Debtor and Black Briar, "contracts are generally only valid between the parties who execute them," "[a]ctions arising out of a contract can be prosecuted only by one contracting party against the other", and "an agent is not generally bound by a contract he executes on behalf of the principal." (dkt. #17, p. 16) (citations omitted); (iii) any claim that the Debtor may have had for injuries that it suffered prior to the Confirmation Date are time-barred by Puerto Rico's general tort statute, 31 L.P.R.A. § 10801 (2020), which has a one-year statute of limitations; and (iv) Mr. Nalley is not liable to the Debtor under 31 L.P.R.A. § 10801 (2020) because each theory underlying Count III fails to satisfy one or more elements.

10. On June 28, 2026, the Committee filed a *Response to Defendants' Motion to Dismiss Amended Complaint* (dkt. #18) reiterating that Black Briar's engagement required court approval under 11 U.S.C. §§ 327(a) and 330(a); consenting to "Black Briar's request for dismissal of Count I to the extent that this count seeks the recovery of fees received prior to May 21, 2023" (id., p. 16); clarifying that the *Amended Complaint* does not assert a claim for fraud; and clarifying that the terms of the Management Agreement that Black Briar breached was provide a minimum 30-day notice to the Debtor when it terminated the agreement[1], and failed to continue operating the Debtor through the Fortaleza Closing, resulting in monetary damages. With respect to Count III, the Committee that Section IV.G.2(iii) of the confirmed plan designates the Committee as the Debtor's representative to pursue all claims, rights and causes of action of the Debtor, and does not limit the Committee's standing to claims arising after plan confirmation. In the alternative, the Committee argues that it has standing to pursue claims through the plan effective date, June 20, 2024, "which address the vast bulk of the malfeasance on which Count III rests" (id., p. 20). The Committee further argues that as both the manager of

---

[1] Although the Committee also alleges that Black Briar failed to give notice to both it and the court, it nevertheless acknowledges the Management Agreement only required notice *on the Debtor*.

Black Briar and the sole officer of the Debtor, Mr. Nalley owed a fiduciary duty to the Debtor, that the one-year statute of limitations of 31 L.P.R.A. § 10801 (2020) "would apply to only some of the Unauthorized Payments (and none of Mr. Nalley's other fiduciary breaches)", and "substantial doubt exists as to when the one-year limitations period began to run, and when it expired" (id., p. 21) (underline original). The Committee further argues, *inter alia*, that the confirmed plan omits an exculpation clause for its directors and officers, and that although the rejection of timeshares "has not resulted (and may never result in) Debtor liability … th[at] fact does not mean that the claim for this malfeasance has not accrued" by "[a]t minimum … the time that counsel has had to expend (and fees it has had to incur) addressing this … issue" (id., p. 24).

11. On November 4, 2025, the Defendants filed a *Reply in Further Support of Motion to Dismiss the Amended Complaint for Failure to State a Claim* (dkt. #34) wherein they note the Committee's concession that dismissal of Count I, at least in part, is warranted; that the Committee failed to allege any breach of the Management Agreement's covenants, ergo dismissal of Count II is appropriate; and that because the confirmed plan states that the Debtor's causes of action were transferred to the Committee "[a]s of the Effective Date", and Debtor's failure to pay the U.S. Trustee's fees occurred on July 31, 2024, and the Debtor's supposed loss of the "Insurance Proceeds" occurred when the Debtor entered into the "Attenure Agreement" on June 21, 2024 (see *Amended Complaint*, dkt. #16, ¶¶ 69 and 87), the causes of action relating to those two incidents were not transferred to the Committee, ergo dismissal of Count III is mandatory, at least in part.

12. The preliminary pretrial scheduled for September 22, 2025, was continued without a date, pending a decision on the motion to dismiss. See *Order*, dkt. 25

Applicable Law and Analysis

(A)     Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(6) and 8

Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings through Fed. R. Bankr. P. 7012. In deciding a motion under Fed. R. Civ. P. 12(b)(6), the court must determine whether a complaint states a plausible claim. "The purpose of a motion to dismiss under Fed. R.

-7-

Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." In re Instituto Medico del Norte, Inc., 2021 WL 4944085, at *2, 2021 Bankr. LEXIS 2924, at *7 (Bankr. D.P.R. 2021); Lugo Alejandro v. Betancourt (In re Betancourt), 2021 WL 438858, 2021 Bankr. LEXIS 298 (Bankr. D.P.R. 2021); Vélez Arcay v. Banco Santander de P.R. (In re Vélez Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id., at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate

complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. See Pérez v. Rivera (In re Pérez), 2013 WL 1405747, at *3, 2013 Bankr. LEXIS 1561 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

"Simply because the court is hesitant to dismiss a claim in the early sta[g]es of litigation, however, does not mean that there are not circumstances where the court can and should act. Fed. R. Civ. P. 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law." Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 340 (D.R.I. 2002). As the First Circuit has stated, "in the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely ... toothless.' " Correa v. Arrillaga, 903 F.2d 49, 52 (1st Cir. 1990), quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Consideration of a motion to dismiss requires the court to assume the truth of all well-plead facts and give the benefit of all reasonable inferences therefrom. A complaint that states a claim plausible on its face survives a motion to dismiss. See Banco Santander P.R. v. P.R. Hosp. Supply, Inc. (In re P.R. Hosp. Supply, Inc.), 617 B.R. 181, 191 (Bankr. D.P.R. 2020).

(A)  Pleading Standard under Fed. R. Civ. P. 9(b)

Claims alleging fraud are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), made applicable to adversary proceedings through Fed. R. Bankr. P. 7009. Under Fed. R. Civ. P. 9(b), the pleader "must state with particularity the circumstances constituting fraud or mistake", but may plead "[m]alice, intent, knowledge, and other conditions of a person's mind" generally. Fed. R. Civ. P. 9(b). "[T]he pleader ordinarily must 'specify the who, what, where,

and when' regarding the alleged fraud. Other facets of fraud, such as intent, may be pleaded in general terms." Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 49 (1st Cir. 2020), quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004), and Rodi v. Southern New England School of Law, 389 F.3d 5, 14 (1st Cir. 2004). "[A] complaint must allege with some specificity the acts constituting fraud ... conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." In re Actrade Fin. Techs. Ltd., 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005), quoting Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd., 85 F.Supp.2d 282, 293 (S.D.N.Y. 2000). The purpose of the heightened pleading standard is "to place the defendants on notice and enable them to prepare meaningful responses, to preclude the use of a groundless fraud claim as pretext for discovering a wrong, and to safeguard defendants from frivolous charges that might damage their reputation." Dumont v. Reily Foods Co., 934 F.3d 35, 39 (1st Cir. 2019) (internal quotations omitted).

Whether the rule's particularity requirements apply, the First Circuit has opined as follows:

> We think it evident that even if we assume (without deciding) that [Fed. R. Civ. P.] 9(b) applies across the board to claims of actual and constructive fraudulent conveyance, it would require only that a plaintiff specify in sufficient detail the who, what, where, and when of the challenged transfers. See Alt. Sys. Concepts, 374 F.3d at 29. [Fed. R. Civ. P.] 9(b)'s particularity requirements have no bearing with respect to the other pertinent elements of fraudulent conveyance claims, such as whether the debtor made the transfers with actual fraudulent intent; whether the debtor made the transfers without receiving reasonably equivalent value; or whether the debtor was insolvent at the time of the transfers or rendered insolvent by them. Those elements do not fall within the 'who, what, where, and when' taxonomy … need only comply with the plausibility standard that customarily controls the adequacy of pleadings. See Iqbal, 556 U.S. at 678 []; Twombly, 550 U.S. at 567-568.

Foisie, 967 F.3d at 50.

Further, Fed. R. Civ. P. 9(b) does not demand a dollar-for-dollar accounting so long as the pleader has adequately pleaded the who, what, where, and when of the alleged fraudulent conduct, the rule does not obligate they allege every detail incident to the fraud. See Foisie, 967 F.3d at 50-51 ("Rule 9(b) does not demand a blow-by-blow account"), citing Dumont, 934 F.3d

-10-

at 38-39. This principle applies with special force when —as in this case— the pleader is an outsider and many, if not all, of the facts missing from the complaint are in the exclusive possession of other parties and potential subjects of discovery. See id.; Corley v. Rosewood Care Ctr., Inc. of Peoria, 142 F.3d 1041, 1051 (7th Cir. 1998) (noting that particularity requirement of Fed. R. Civ. P. 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail a claim, particularly where plaintiff alleges a fraud against one or more third parties); Alt. Sys. Concepts, 374 F.3d at 29 fn. 4 (noting "extraordinary circumstances" might warrant relaxation of particularity requirement and citing Corley). See also In re Comprehensive Power, Inc., 578 B.R. 14, 24 (Bankr. D. Mass. 2017) (noting that Fed. R. Civ. P. 9(b) standard is relaxed when fraud claims are brought by a trustee who must plead from second-hand knowledge); Gowan v. Patriot Grp., LLC (In re Dreier LLP), 452 B.R. 391, 408 (Bankr. S.D.N.Y. 2011) (holding that "[f]or claims brought by a bankruptcy trustee, courts take a more liberal view when examining allegations of actual fraud ... in the context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge") (internal quotations and citations omitted).

The claims asserted in the *Amended Complaint* do not allege fraud and thus are not subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). See dkt. #18, p. 17 (clarifying that "[t]he Amended Complaint … contains no fraud claim against Black Briar").

(B)     Count I: Avoidance and Disgorgement Against Black Briar

The Committee asserts that the Management Agreement, the services performed thereunder, and the fees received therefrom did not receive court approval in violation of Sections 330 and 549 of the Bankruptcy Code, and seeks to avoid and disgorge said amount pursuant to Sections 329, 330 and 550 of the Bankruptcy Code, together with prejudgment interest. Defendants contend that both the management Agreement and the payments made thereunder were made in the ordinary course of business and, as such, were authorized under Section 363(c)(1) of the Bankruptcy Code. The Committee argues otherwise.

The Bankruptcy Code imposes separate approval requirements for certain categories of transactions made to professionals retained in the ordinary and outside the ordinary course of business. Section 327(a) authorizes the employment of professionals "with the court's approval", whose compensation is authorized under Section 330(a)(1) only after notice and a hearing. See 11 U.S.C. §§ 327(a), 330(a)(1). In contrast, ordinary course transactions, including the use of property of the estate, are authorized under Section 363(c)(1) without notice or a hearing. See 11 U.S.C. § 363(c)(1). Section 363 is designed to allow a debtor-in-possession the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, id., while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary. See 11 U.S.C. § 363(c)(2).

Under Section 549, the debtor-in-possession may avoid and recover certain post petition transactions. However, the debtor-in-possession may not avoid any payment "authorized by this title or by the court". 11 U.S.C. § 549(a)(2)(B). Courts read Section 549(a)(2)(B) as proscribing the disgorgement of payments made in the ordinary course of business pursuant to Section 363(c)(1). See In re St. Joseph Cleaners, Inc., 346 B.R. 430, 436 (Bankr. W.D. Mich. 2006) ("recovery is unavailable because Section 549 does not permit the recovery of prior payments made by the estate in the ordinary course under the authority of Section 363(c)."); In re Livore, 473 B.R. 864, 870 (Bankr. D.N.J. 2012) ("[W]e are unaware of any cases that hold that ordinary course payments may be disgorged."); In re Anolik, 207 B.R. 34, 40 (Bankr. D. Mass. 1997) ("It is inequitable to order disgorgement of payments made to trade creditors and other similarly situated parties 'in the ordinary course of business' of a Chapter 11 case. 'The alternative would make it impossible for any prudent business person to voluntarily do business, even on a cash basis, with a chapter 11 debtor.' ") (citation omitted). Courts also do not allow disgorgement after a chapter 11 plan is confirmed. See In re St. Joseph Cleaners, Inc., 346 B.R. at 441. Otherwise, the finality of the plan would be circumvented. See In re Headlee Mgmt. Corp., 519 B.R. 452, 460 (Bankr. S.D.N.Y. 2014), citing In re Kaleidoscope of High Point, Inc., 56 B.R. 562, 565-566 (Bankr. M.D.N.C. 1986) ("Clearly, parties must be able to rely on the permanency

of the plan. Negotiation and compromise of positions would be greatly hindered or impossible if creditors had to contend with the possibility of returning funds after disbursement through valid court order.").

Courts use different definitions to distinguish professionals hired and paid in the ordinary course of business under Section 363 from those professionals retained under Sections 327, 328, 329, and 330. In deciding whether a transaction is in the ordinary course, courts apply two commonly used joint tests: (i) the horizontal test and (ii) the vertical test (or reasonable expectations test). See 3 Collier on Bankruptcy ¶ 363.03[1] (16th ed. 2026). Under the horizontal test, courts take a industry-wide perspective to determine whether the transaction at issue would normally be entered into by a similar business. A transaction may be considered common if it is ordinary within the industry, even if infrequent. See In re Dooley's Rainwater Conditioning, Inc., 2012 WL 6737501, at *4 (Bankr. D. Kan. 2012) (noting the horizontal test "as applying an industry-wide perspective to compare the debtor's business to other like businesses and determine whether the transaction is of a type that occurs in the day-to-day operation of the debtor's business."). Under the vertical test, courts examine whether the transaction is within the range of risks reasonably expected by debtor's creditors. Under the vertical test, a transaction that might be ordinary in the debtor's industry might not be ordinary for the debtor's business. The vertical test necessarily requires an examination of debtors' pre- and post-petition activities to determine their "ordinariness." See id., at *5.

Regardless of the test adopted, the determination is a question of fact. See In re Bartley Lindsay Co., 137 B.R. 305, 308 (D. Minn. 1991). The Committee has adequately pleaded that the Management Agreement was not entered into in the ordinary course, and the record, at this stage in the proceedings, does not support Defendants' conclusory statements as the transaction's ordinariness. Dismissal as this juncture is thus not appropriate. Consequently, the court denies Defendants' request for dismissal of Count I with respect to fees received from May 21, 2023 onward. Partial dismissal of Count I is appropriate with respect to fees received prior to May 21,

2023. See dkt. #18, p. 16 (Committee' consent to "Black Briar's request for dismissal of Count I to the extent that this count seeks the recovery of fees received prior to May 21, 2023").

(C)      Count II: Breach of the Management Agreement Against Black Briar.

The Management Agreement, which is central to the Committee's claims against the Defendants, was not attached to the *Amended Complaint* or the responses by the parties. The court takes judicial notice under Fed. R. Evid. 201 of the Management Agreement filed in a separate adversary proceeding before this court, Adv. Proc. No. 25-00006, dkt. #18-1.[2] Paragraph 2.1 of such agreement outlines an initial five-year term, beginning on December 15, 2022, through and including midnight on December 31, 2027 (Adv. Proc. No. 25-00006, dkt. #18-1, p. 5, ¶ 2.1), provides that Black Briar (as Manager) "shall have the right to terminate his Agreement without cause, upon thirty (30) days written notice to Owner", that is, to the Debtor (id., p. 15, ¶ 7.2.3), and that "[e]ither party may terminate this Agreement, for any reason or no reason, with ninety (90) days prior written notice to the other party" (id., p. 15, ¶ 7.3). Paragraph 3 outlines Black Briar's "property management, project management, and leasing duties", which makes no mention that Black Briar must manage the Property (as such term is defined therein) through the closing of the sale of its assets. The court also cannot locate an obligation relating to the Committee's allegations that Black Briar conducted the Debtor's business for the benefit of Fortaleza, or that Parliament High Yield Fund, LLC received more than the secured amount of its claim. At dkt. #18, the Committee clarified that Black Briar breached the Management Agreement when it failed to provide 30-days' notice to the Debtor of its intent to terminate the same, and failed to operate the Debtors' business through the Fortaleza Closing. No other clause was identified by the Committee as having been breached.

---

[2] The extent to which a court may consider extrinsic evidence outside the four corners of the complaint depends upon whether that record, or the facts within it, are susceptible to judicial notice under Fed. R. Evid. 201. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citations omitted) ("Under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment. These exceptions include 'documents the authenticity of which are not disputed by the parties; ... official public records; ... documents central to plaintiffs' claim; [and] ... documents sufficiently referred to in the complaint.' ").

Under the Management Agreement, Black Briar had the authority to unilaterally terminate the agreement prior to expiration of the initial term. Whether Black Briar breached its duty to provide prior written notice of termination is a question of fact. Consequently, the court denies Defendants' request for dismissal of Count II solely with respect to claims arising from Black Briar's unilateral termination of the Management Agreement. All other alleged breaches for which "sufficient factual matter" is not alleged, and are unsupported by reference to any specific contractual provision, are dismissed.

(D)    Count III: Breach of Fiduciary Duties Against Mr. Nalley.

The question of whether, in a particular factual setting, a fiduciary relationship exists is a question of fact. See Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d 40, 44 (1st Cir. 1995). Consequently, the court denies Defendants' request for dismissal of Count III.

Conclusion

In view of the foregoing, partial dismissal is appropriate with respect to specific concessions made by the Committee in its *Response to Defendants' Motion to Dismiss Amended Complaint* (dkt. #18). Consequently, dismissal of Count I is appropriate with respect to fees received prior to May 21, 2023; and dismissal of Count II is appropriate with respect to all alleged breaches for which "sufficient factual matter" is not alleged, and are unsupported by reference to any specific contractual provision.

Of those claims that remain, taking the well-pleaded, non-conclusory allegations as true and drawing all reasonable inferences in favor of the Committee to determine if they plausibly state a claim for relief against Defendants, the court finds that dismissal is not appropriate. Defendants' *Motion to Dismiss* (dkt. #17) is hereby DENIED, in part, and GRANTED, in part.

Partial judgment will be entered accordingly.

-15-

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of April 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge